UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

Michael Conklin,                                      )
                                                      )
            Plaintiff,                                )
                                                      )
      v.                                              )         CIV. ACT. NO.   <u>CV 122-093</u>
                                                      )         COMPLAINT
Jerry Leonard, as an individual acting                )         DAMAGES
under color of law as an officer with                 )         INJUNCTIVE RELIEF
the Columbia County Sheriff's                         )         JURY TRIAL REQUESTED
Department,                                           )
                                                      )
Cody Rose, as an individual acting                    )
under color of law as an officer with                 )
the Columbia County Sheriff's                         )
Department,                                           )
                                                      )
Adrian Fredericks, as an individual acting            )
under color of law as an officer with                 )
the Columbia County Sheriff's                         )
Department,                                           )
                                                      )
John/Jane Doe Officers, as individuals                )
acting under color of law as an officer with          )
the Columbia County Sheriff's                         )
Department, who threatened witnesses                  )
with a taser to prevent videoing,                     )
                                                      )
R.J. Koch, as an individual acting                    )
under color of law as a supervisor with               )
the Columbia County Sheriff's                         )
Department,                                           )
                                                      )
John/Jane Doe Supervisors, person(s)                  )
acting under color of law as supervisors              )
on use of force, including as a supervisor            )
of K-9 units, with the Columbia County                )
Sheriff's Department,                                 )
                                                      )
Clay Whittle, individually and in his                 )
official capacity under color of law                  )
as the Sheriff of Columbia County                     )
Sheriff's Department, and as the                      )

1

law enforcement policymaker,                    )
                                                )
Columbia County, through                        )
Doug Duncan, in his official capacity           )
as the Chair of the Columbia County             )
Commission, and all Commissioners               )
in their official capacity,                     )
                                                )
       Defendants.                            )
_____)

## COMPLAINT

COMES NOW, Plaintiff, who shows the Court the following:

### Jurisdiction and Venue

1.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) because this action asserts one or more deprivations of federal constitutional rights under color of law, which is actionable under 42 U.S.C. §§ 1983 and 1985(3), to provide remedial relief of damages for injury caused by the deprivation of federal rights, and for prospective injunctive relief to prevent future deprivations.

2.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over claims under Georgia law because the facts supporting the state claims arise from the same or similar facts supporting and form at least part of the same case or controversy under Article III.

3.      Venue is proper within the Augusta Division because the challenged incident occurred in Columbia County, and one or more of the defendants resides within Columbia County, which is in the Augusta Division.

### Parties

4.     Plaintiff Michael Conklin is a person and an adult competent to bring this action.

5.      Defendant Deputy Jerry Leonard is sued individually for actions and inaction taken under color of, though not necessarily within the law, as an officer with the Columbia County Sheriff's Department.

6.      Defendant Deputy Cody Rose is sued individually for actions and inaction taken under color of, though not necessarily within the law, as an officer with the Columbia County Sheriff's Department.

7.      Defendant Deputy Adrian Fredericks is sued individually for actions and inaction taken under color of, though not necessarily within the law, as an officer with the Columbia County Sheriff's Department.

8.      Defendant(s) John/Jane Doe Officers, as individual(s) acting under color of law as an officer(s) with the Columbia County Sheriff's Department, who threatened witnesses with a taser to prevent videoing of the challenged events.

9.      Defendant Deputy R.J. Koch is sued individually for actions and inaction taken under color of, though not necessarily within the law, as a supervisor and officer with the Columbia County Sheriff's Department, who personally reviewed and ratified the challenged events; and who had reviewed prior events with unlawful action or inaction by one or more of the named officers but failed to take reasonable corrective action.

10.      Defendant(s) John/Jane Doe Supervisor(s) are sued because the information about the identity of the officers assigned to supervise and correct unlawful arrests, the use of excessive force, including use of K-9's to bite when such biting is unreasonable, is currently unknown to Plaintiff, is in the exclusive possession of the Defendants and is available only through discovery.

11.    These John/Jane Doe Supervisors, have a duty to review information from prior events by witnesses and officers, to make corrections to the actions and inactions of the named Defendants, that would have prevented the challenged initial use of force, the arrest without probable cause, and use of the K-9 to bite when officers had Plaintiff under control, where Plaintiff cannot determine the names of these supervisors, as the information is in the exclusive control of Defendants and will require discovery.

12.    Defendant Clay Whittle, is sued individually and in his official capacity for actions and inaction taken under color of, though not necessarily within the law, as the Sheriff of and as a policy maker for law enforcement matters with the Columbia County Sheriff's Department, including as to the supervision of deputies and supervisors, and Defendant Whittle is responsible for the existence and elimination of practices and customs which are deliberately indifferent to deprivations of federal rights, such as unlawful stops, unreasonable arrests, unreasonable use of force by officers and the K-9's officers control.

a.  Clay Whittle is sued individually and in his capacity as a supervising officer and policy-maker of the Columbia County Sheriff's Department, for causing and leaving in place a custom, practice or policy that officers who detain, arrest and use force on citizens are neither provided nor required to wear body cameras, which causes unreasonable arrest and excessive force, because under existing policy the officers can create vague and false written reports, and the truth of their actions is not reasonably accessible for reasonable supervisory review, correction and discipline, and is a practice that continues to cause officers to commit unreasonable arrests and use excessive force, to manipulate the written report system, causing unlawful prosecutions and prevent correction, causing further

deprivation of the rights of others, where it is deliberately indifferent to ignore a readily available means to create real time, visible, permanent evidence that body cameras provide.

b.   Clay Whittle is sued individually and in his capacity as a supervising officer and policy-maker of the Columbia County Sheriff's Department, for causing and leaving in place a custom, practice or policy of the use of K-9's to unreasonably bite when a citizen is, or could be under control of officers without the use of a dog to bite, under misdemeanor or non-dangerous felony charges, preceding manufactured obstruction charges.

c.    Clay Whittle is sued individually and in his capacity as a supervising officer and policy-maker of the Columbia County Sheriff's Department, for causing and leaving in place a combination of customs and practices that are indifferent to the foreseeable causation of the deprivation of rights, caused by the absence of body cams, inadequate supervision and training or pretextual arrests and unreasonable use of force, and unreasonable dog bites.

13.    Defendant Columbia County is sued through Doug Duncan, in his official capacity, as the Chair of the Columbia County Commissioners, along with the other Commissioners in their official capacities as Commissioners for policies, practices or customs of the refusal and failure to provide body cameras, audio and video, to the Sheriff's Department, where that failure and refusal is deliberately indifferent to prevention of foreseeable deprivation of rights to protect the right of presumed innocence, the right to travel and the right to bodily integrity, where the custom of refusing to provide and require body cameras causes the endangerment of the safety of the officers by the willingness of officers to use excessive force in the face of the foreseeable and

inviolate Georgia right of self-defense to protect against an unlawful arrest and unnecessary force.

14.     All of the Defendants who are sued individually are sued for damages, and are sued individually and jointly, for proximately causing one or more deprivations of rights and injuries to Plaintiff.

15.     Defendants Sheriff Whittle is sued in his individual and official capacities, and the Commissioners are sued in their official capacities for prospective injunctive relief to mandate that they provide and require the use of body cameras (audio and video) on the officers, to allow for meaningful review by superiors, to use as a basis for training, discipline and termination, in an efficient and effective way, by providing and preserving truthful, real time visual evidence about the reasonableness of stops, use of subterfuges that lead to false arrest engendering resistance and overcharging of obstruction, that will lead to better training and more truthful and safer interaction between police and citizens, and will minimize the unnecessary use of force, that triggers the natural reaction and inviolate right of self-defense, in fear of and in response to unnecessary force.

Facts

16.     Plaintiff incorporates each and every allegation above as if fully stated herein.

17.     On July 25, 2020, shortly after midnight, Plaintiff, Michael Conklin was driving a truck with three passengers: Heather Keier, Sean Burnside and Dana Harrelson.

18.     The four had been at the house of Mr. Burnside and Ms. Harrelson on Wheeler Road, a short drive from the intersection at the I-20 on-ramp and Belair Road, where the challenged events occurred.

19.    After midnight, into early morning July 25, 2020, when still at the house, Ms. Keier convinced Mr. Conklin to drive her to Thomson, and Sean and Dana went along for the ride.

20.    Defendant Ofc. Rose was on duty that night, and while the specific reason for his presence is unknown at this time; prior to discovery, he was near the I-20 on-ramp and Belair Road.

21.    When the truck lawfully driven by Plaintiff was near I-20 on-ramp and South Belair Road, and Defendant Ofc. Rose spotted the vehicle plaintiff was driving, Rose turned on the police lights.

22.    Plaintiff Conklin saw the police lights and pulled the truck over and stopped.

23.    Deputy Rose exited his police vehicle and approached Mr. Conklin seated in the truck.

24.    Dep. Leonard was at the scene and had a K-9, and walked the dog around the truck searching for drugs, but the dog was not used to search inside the cab, where Mr. Conklin was located, therefore the dog could not have located any narcotics within the cab.

25.    During Defendant Deputy Rose's discussion with Mr. Conklin, who was in the driver's seat, Mr. Conklin asked Dep. Rose the reason for the stop.

26.    Defendant Dep. Rose said that the light was out on the license plate.

27.    Mr. Conklin indicated Ofc. Rose that he had made sure the lights were working a short time before, and asked Dep. Rose if he could get out and check the lights.

28.    Defendant Dep. Rose indicated to Plaintiff Conklin that he could check the light on the license plate, which was the alleged basis for the stop, so Mr. Conklin got out of the cab, and started walking toward the back of the truck.

29.    When Plaintiff reached the rear of the truck, but before he could check the light, even though defendant Deputy Rose was aware that he had authorized Conklin to exit the vehicle and

look at the light on the license plate, without any warning for or of his impending assaultive actions, Defendant Dep. Rose shoved Plaintiff up against the back of the truck and started to throw Conklin to the ground.

30.     In exercise of his right of self-defense under Georgia law to the protect himself from the unexpected, unnecessary and unreasonable assaultive behavior of Defendant Ofc. Rose, Mr. Conklin exercised a reasonable amount of force to protect himself from the unlawful detention or arrest caused by the Defendant Deputy Rose.

31.     Dep. Rose took Plaintiff Conklin to the ground.

32.     Defendant Dep. Leonard then joined Def. Dep. Rose, and both were trying to put cuffs on Conklin.

33.     Shortly thereafter, Defendant Dep. Fredericks, joined the other two Defendant deputies, Rose and Leonard, in attempting to cuff Conklin.

34.     Plaintiff was being choked by Dep. Fredericks, and in self-defense, Plaintiff bit Defendant Deputy Fredericks' left arm.

35.     The three deputies gained sufficient control of Mr. Conklin, such that Def. Dep. Leonard left the other two deputies who were in control of Conklin.

36.     Leonard went to his vehicle to get the K-9 he would later use to cause the dog bite attack on Conklin.

37.     Had Leonard stayed with the other two deputies, they could have accomplished the cuffing of Conklin, without using the dog bite Conklin.

38.     According to Defendant Ofc. Rose, Conklin was allegedly stopped for a light being out on his license plate, which was disputed.

39.    Dep. Leonard pre-textually warned Conklin to stop fighting when Conklin was under control, so Defendant Leonard could use the dog to bite Conklin.

40.    Even though Conklin was under control of the two officers, and but for the fact that Leonard was occupied controlling the K-9, Leonard utilized the dog to bite Mr. Conklin on the right calf.

41.    Dep. Leonard continued to demand Conklin's complete calm, in spite of the dog biting Conklin's leg and Conklin's foreseeable reaction and resistance to the dog causing the pain and serious injury, yet defendant Leonard ordered Mr. Conklin to stop resisting and only then, would Leonard remove the dog, knowing that Conklin could not stop trying to protect himself from the biting dog.

42.    As the dog was biting Conklin, Leonard was riling up the dog by hitting the dog's head.

43.    All of the Defendant officers knew that there were no body cams or videos to dispel their version of events, that could be used to protect innocence or provide mitigation in a criminal trial, and as a result proceeded with the impunity to punish Conklin for his resistance to the pretextual search and arrest.

44.    Dep. Leonard alleges Mr. Conklin punched and kicked the dog, causing the dog to lose grip and bite into Conklin's left calf, when Plaintiff was foreseeably and justifiably asserting self-defense from the dog's unnecessary biting.

45.    As the other two deputies continued to hold Mr. Conklin down, the dog continued to attack, but Defendants Rose and Fredericks refused to demand that Defendant Leonard stop the dog from biting Conklin.

46.    As Conklin was under control of the two deputies, and the dog was biting Conklin, Dep. Leonard punched Mr. Conklin in the face with a closed fist.

47.     Only Leonard's version of events was provided in response to the GORA request in the form of a one and one-half page incident report, which is significant because no other officer statements have been provided, where the statements of other officers are critical to evaluating the events, assuming statements are created without collusion between or among the officers.

48.     More deputies arrived (unnamed in the incident report) and Mr. Conklin was placed in handcuffs.

49.     The only three names in the report provided by Columbia County in response to Georgia open records requests are Rose, Leonard and Fredericks.

50.     During the use of the dog to bite Conklin, Sean Burnside and Dana Harrelson, tried to get their phones out and use video function to make a video of the Defendant officers Rose's, Fredericks' and Leonard's misconduct, but an unknown John Doe officer aimed a taser at them, and threatened to use the taser if they tried to video the events.

51.     According to the report only prepared Dep. Leonard, and the only documents about this incident provided under a GORA request, methamphetamine was found in Mr. Conklin's coin pocket during the challenged use of force for a stop alleged to have been about the license plate light of allegedly not working, as a pretextual justification for the stop and as the predicate to the detention, arrest for resistance to the unlawful and unreasonable use of force, and then the search.

52.     Narcotics Investigator Wilgocki arrived, and the investigation was turned over to him.

53.     Gold Cross ambulance service responded and transported Mr. Conklin to Doctors Hospital, where he was treated for dog bites to both legs cleansing in preparing the wounds and using stables to attempt to close the ones.

54.     Plaintiff Conklin was billed for the ambulance services and the medical treatment at Drs. Hospital, which were necessary for injuries caused by the Defendants while he was in the custody of the claim be County deputies.

55.     The Defendant County has the duty to pay for and provide medical care to persons in its control and custody, and those amounts will be proven with more specificity at trial.

56.     Plaintiff Conklin suffered physical injury, pain and emotional suffering from the unlawful detention, unreasonable force and the challenged dog bites, and from the reasonably necessary the treatment of the injuries, including the staples, and he continues to suffer emotional suffering and pain in connection with the permanent injury caused by the combination of misconduct by one or more of the Defendants individually or jointly, from Dep. Rose, to Deputy Leonard, Dep. Fredericks, to supervisors who did not correct foreseeable misconduct, to the Sheriff individually and in his official capacities, by his policies, customs and practices challenged herein, and the polices maintained by the County Commissioners to fail or refuse to provide or require the use of body cameras by Columbia County deputies.

Count I

Fourth and Fourteenth Amendment deprivation by Ofc. Rose,

then Officers Leonard and Fredericks, under 42 U.S.C. § 1983, and § 1985(3)

57.     Plaintiff incorporates the each and every paragraph above, in particular paragraphs 17-31 of the Facts detailing the lack of probable cause for a search of the person of Conklin for drugs, the traffic/vehicle condition basis for the stop, the fact Rose told Conklin he could look at the license plate light and Rose's surprise use of force to detain and arrest Conklin as he was walking to look at the light.

58.    After the traffic stop, Defendant Rose told Conklin that he stopped Conklin because the light for the license plate on the truck was out.

59.    Defendant Rose did not tell Conklin that they had information that Conklin had a small amount of a controlled substance in his coin pocket.

60.    Defendant Rose did not tell Conklin in any way that they wanted to search Conklin's person.

61.    Defendant Rose could have asked for consent to search Conklin's person, but he did not.

62.    Defendant Rose did not have, present or indicate that they had or were getting a warrant to search Conklin.

63.    Defendant Rose was authorized to detain Conklin in a reasonable manner consistent with a traffic violation.

64.    Objectively Defendant Rose acted as if there were a lawful warrant to search for a dangerous drug on the person of Conklin, and that Conklin was wanted for a dangerous crime in connection with the drug, and that it would be unsafe for the officer to warn Conklin that if he walked any closer to the license plate, he would be detained or arrested.

65.    Plaintiff asked Ofc. Rose if he could check the light on the license plate and Ofc. Rose told Plaintiff he could.

66.    Based on the Defendant Rose's approval to check the light, Plaintiff got out of the cab, and took several steps towards the back of the truck and the license plate.

67.    When Plaintiff was near the back of the truck, without any warning and contrary to the approval, Defendant Ofc. Rose assaulted Plaintiff, pushing him against the back of the truck and then to the ground.

68.    Defendant Officer Rose's use of force on Plaintiff, to tackle Plaintiff when he was walking to look at the light for the license plate as Rose had approved, was without probable cause, articulable suspicion, or trustworthy informant information, in violation of the Fourth Amendment.

69.    Defendant Officer Rose's use of force on Plaintiff was without probable cause, articulable suspicion, or trustworthy informant information, in violation of the Fourteenth Amendment.

70.    Because of training and experience, Defendant Rose, Leonard and Frederick should know of the inviolate right of self-defense in Georgia.

71.    Because of training and experience, Defendant Rose, Leonard and Frederick should know of the right to resist an unlawful arrest.

72.    Because of training and experience, Defendant Rose Leonard and Frederick should know that even if he has the right to use physical force to arrest, if force or attempt to control is used without warning or in a surprising or aggressive manner, the subject will foreseeably react in self defense with at least equal force.

73.    Def. Rose knew that it was unreasonable to use force to take Conklin to the ground where he had told Conklin the Conklin could look at the light, and he knew it was foreseeable that Conklin would resist the surprising take down, and that the resistance was justified under the law of Georgia that right of self-defense is inviolate, and that there is a right to resist an unlawful arrest.

74.    The right to resist an unlawful arrest in Georgia is a state created liberty interest that cannot be lost and negates the use of any resistance to the surprise arrest and take down by Defendant Rose, as the basis for probable cause for an arrest under obstruction.

75.     Defendant Officer Rose failed to warn Defendant Leonard arbitrarily and capriciously failed to warn Defendants Leonard and Fredericks that he, Rose, had arrested Leonard without probable cause for the use of force, that Leonard had rightfully resisted, and that there was no basis to continue to arrest or attempt to detain Conklin.

76.     In the alternative, Defendants Leonard and Fredericks were aware of the common ruse of using an insignificant traffic based offense for a stop, and induce the driver out of the vehicle, and then take surprise action to physically restrain and search him for contraband or weapons, where the officer's actions are frequently met with resistance; justifiable and foreseeable under Georgia law, and then the other officers join in the false arrest and then pretextually use resistance to the unlawful detention or arrest, as probable cause for an arrest for obstruction. gle resistance for a charge of obstruction.

77.     It was foreseeable under the circumstances for Defendant Rose to believe that Defendant Leonard would use the dog to bite Conklin, when Rose, and in the alternative Leonard and Frederick knew, that there was no initial probable cause to use force to take Plaintiff to the ground as was walking to see if the light was out on the license plate, for which it was reasonable to take the time to write a citation for the light that was allegedly out, but not to physically arrest Conklin as if they had a warrant to search or arrest him for possession of a small amount of methamphetamine, when they did not have reliable information that he had possession of contraband.

Count II

Excessive Force in violation of the Fourth Amendment Against Defendant Leonard

78.     Plaintiff incorporates paragraphs 33-46, which show that Conklin was under control and that Leonard used the dog to bite Conklin, and that Leonard used Conklin's resistance to the

14

unlawful use of the dog and protected resistance as the basis for a charge of obstruction and to continue to use the dog to bite.

79.     Paragraphs 39 and 40 show that Conklin was under control when Defendant Leonard used the dog to bite Conklin, where if he had not left to get the dog, then the three officers could have cuffed Conklin, whether it was right or wrong to cuff, and it was unreasonable to use the dog to bite Conklin.

80.     Leonard's use of the dog to bite Conklin was in punishment for Conklin's resistance to the original use of force and protected resistance to excessive force and unlawful arrest, continued use of excessive force through the dog bites.

81.     Plaintiff incorporates paragraphs 70-72, which show that Defendant Leonard knows that resistance to excessive force is protected self-defense under Georgia law, which includes the right to self-defense even if some force might be justified.

82.     When Conklin was under control of officers Rose and Fredericks, Defendant Leonard gratuitously hit Conklin in the face, when that blow to Conklin's face had no legitimate basis to gain control of Conklin's hands, when there were three officers present, and at one point Leonard left the other two to get the dog, and if there was real fear that Conklin could not be controlled, and would escape, over a traffic maintenance charge, or injure another officer, Leonard then Leonard should not have left to get the dog.

Count III

Liability of the Sheriff individually, as a policy maker,

for one or more customs or policies that caused the challenged uses of excessive force

83.     It is has been and is the current policy, custom and practice of Defendant Sheriff Whittle, individually and in his capacity as a policy maker, to refuse to provide or require that the deputies have body cameras, even if the officer is one who is expected to use force to detain and make arrests of citizens.

84.     Instead he relies on written reports by officers who have a self-interest in writing statements and reports in their self interest and to the detriment of the truth and the rights citizens facing detention, possible arrest, prosecution and conviction, to reasonable and meaningful gathering and retention of evidence for later use in criminal or civil actions.

85.     At the time of the incident challenged in Hobbs v. Officer Lee and others, and Sheriff Whittle, individually and in his official capacity, and the County, S.D. Ga. 1:15-cv-00010, which was in 2013, the department did not provide body cameras.

86.     In the Hobbs case, the officer stopped Hobbs for allegedly crossing the lane and during the stop asked to search the car, to which Hobbs consented, but the officers did not tell him they would detain and search him.

87.     When Hobbs got out of the car Defendant officers immediately and without warning attempted to put him in a restraint hold and took him to the ground.

88.     As Hobbs was trying to prevent his face from being on the gound, as he was held by several officers, and officer gratuitously hit him in the face and eye causing a serious injury for which he need medical care.

89.     The reports were written in a manner to hide and cover the wrongdoing of one or more officers.

90.     The facts and process of Hobbs' case are similar to this case.

91.     In the Spring of 2022 the Sheriff paid for a computer app that will help officers write more defensive and detailed reports, recognizing that review of the use of force incidents is a critical aspect of law enforcement.

92.     However, on the basis of cost he rejected the idea of providing body cams.

93.     For truth-seeking law enforcement departments, that are not deliberately indifferent to the attempt at meaningful supervision of officers and the correction of officer misconduct, the rational modern approach is to protect officers from false allegations, and to protect the public by meaningful supervision, is done through the use of use of body cameras under policies that effect their meaningful use.

94.     Unless and until policies practices change requiring deputies to wear body cameras and their actions captured on video are reviewed by supervisors, officers of the Columbia County Sheriff's Department, including defendant Deputy Jerry Leonard, are likely to use excessive force.

95.     The customs and practices of the use of K-9's is deliberately indifferent to the rights of citizens as shown by the outrageousness of this incident, and the fact that the charges have remained pending.

96.     The policy of not providing and requiring body cameras and inadequate training of K-9 handlers combined to cause the challenged deprivation of Plaintiff's rights.

Count for Injunctive Relief

97.     Plaintiff incorporates each and every paragraph above as if stated herein.

98.     Plaintiff asks the Court to require and order Columbia County to provide and require the use of body cameras on officers, to protect the rights of all citizens under the Fourth and Fourteenth amendments from unlawful stops, arrest, use of excessive force and malicious or over

17

charged prosecutions, and to allow meaningful review of the interaction of officers with citizens by supervisors and the judicial system in an efficient manner promoting safe law enforcement. .

WHEREFORE, Plaintiff prays judgment against one or more Defendants, individually or jointly for the following:

a.      Compensatory damages as allowed by law;

b.      Special damages, as more particularly shown at trial;

c.      Damages for injuries caused by deprivation of Constitutional rights under the United States Constitution;

d.      Punitive damages against each individual Defendant in their individual capacity;

e.      Reasonable attorney fees, costs and expenses of litigation under 42 U.S.C. § 1988;

f.       Any other and further relief so ordered.

A JURY TRIAL IS HEREBY REQUESTED.

This the 25th day of July 2022.

/s/ John P. Batson
John P. Batson
Ga. Bar No. 042150
Attorney for Plaintiff
P.O. Box 3248
Augusta, GA 30914
706-737-4040
FAX 706-7363391
jpbatson@aol.com

Prepared by:

John P. Batson
P.O. Box 3248
Augusta, GA 30914
706-737-4040