IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

U.S. DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

MICHAEL CONKLIN,　　　　　　　*
　　　　　　　　　　　　　　　　*
　　　　　Plaintiff,　　　　　*
　　　　　　　　　　　　　　　　*
　　　　　v.　　　　　　　　　　*　　　CV 122-093
　　　　　　　　　　　　　　　　*
JERRY LEONARD, et al.,　　　*
　　　　　　　　　　　　　　　　*
　　　　　Defendants.　　　　　*
　　　　　　　　　　　　　　　　*
　　　　　　　　　　　　　　　　*

AUG - 1 2025

FILED

**O R D E R**

Before the Court are Defendants' motion for summary judgment
(Doc. 51) and motion to exclude testimony (Doc. 56), as well as
Plaintiff's fourth motion for extension of time to respond to
Defendants' motion for summary judgment (Doc. 67) and fifth motion
for extension of time to respond to Defendants' statement of
material facts (Doc. 69). For the following reasons, Plaintiff's
motions for extensions of time are **DENIED**, Defendants' motion for
summary judgment is **GRANTED**, and Defendants' motion to exclude
testimony is **DENIED AS MOOT**.

## I. BACKGROUND

Plaintiff initiated this action on July 25, 2022, alleging
claims arising from an altercation with Columbia County Sheriff's
Deputies Jerry Leonard, Cody Rose, and Adrian Fredericks (the

"Deputies") during a traffic stop two years earlier. (Doc. 1.) Defendants' statement of material facts, which for reasons explained below the Court deems admitted by Plaintiff, sets forth the following underlying events. (Doc. 53.)

On the evening of July 24, 2020, Plaintiff brought methamphetamine ("meth") to a gathering with three friends at a home in Columbia County, Georgia. (Id. at 1.) He and his friends each smoked two bowls of meth over the course of the evening and into the next morning. (Id. at 1-2.) During the middle of the night, Plaintiff agreed to drive one of the friends to meet someone on the west side of Columbia County. (Id. at 2.) Plaintiff and his three friends got in his truck, with Plaintiff in the driver's seat. (Id.) Plaintiff still had some unsmoked meth on his person when he got into the truck. (Id.)

While Plaintiff was driving his friends, Defendant Rose, a road patrol deputy, noticed Plaintiff's vehicle did not have functioning tag lights and began following it. (Id.) When Plaintiff turned onto an entrance ramp to I-20 without using a turn signal, Defendant Rose effected a traffic stop on Plaintiff's vehicle. (Id. at 2-3.) Plaintiff stopped his vehicle on the entrance ramp. (Id. at 3.)

Once stopped, Plaintiff complied with Defendant Rose's request for his driver's license, registration, and proof of insurance. (Id.) While running a computer search on Plaintiff's

2

information from his patrol car, Defendant Rose called Defendant Leonard to come to the scene to perform an open-air K-9 sniff on Plaintiff's vehicle. (Id.) Defendant Leonard and his police dog, Copper, arrived while Defendant Rose was running the computer search. (Id.) Copper alerted to the presence of narcotics, and Defendant Rose ordered Plaintiff to get out of the vehicle, which Plaintiff did. (Id. at 3-4.) Defendant Leonard returned Copper to the patrol car. (Id. at 4.) Defendant Rose told Plaintiff he planned to search Plaintiff and the vehicle because Copper had alerted to narcotics. (Id.) Plaintiff then began walking toward the rear of his truck, allegedly to look at his tag lights. (Id.) Defendant Rose ordered Plaintiff to stop moving, but Plaintiff refused. (Id.) Defendant Rose then grabbed Plaintiff's right arm and ordered him to put his hands behind his back, but Plaintiff jerked away and began yelling. (Id. at 5.) Defendant Leonard, noticing Plaintiff's resistance, joined Defendant Rose to help handcuff Plaintiff. (Id.) Plaintiff continued to refuse to place his hands behind his back and instead proceeded to physically fight with Defendants Leonard and Rose. (Id.) Defendant Leonard tackled Plaintiff to the ground, and Plaintiff and Defendants Leonard and Rose found themselves in a muddy ditch alongside the road as they continued to try to handcuff Plaintiff. (Id. at 5-6.) During the melee, Plaintiff ended up on top of Defendant Leonard and punched him in the neck, abdomen, and shoulder. (Id. at 6.) Even after

another officer, Defendant Fredericks, arrived to assist, the Deputies were still unable to obtain control over Plaintiff. (Id.) Plaintiff then bit Defendant Fredericks on the forearm. (Id. at 8.) Sometime during the fight, Plaintiff reached for his waistband. (Id. at 6.)

In response to Plaintiff's physical resistance and violence, Defendant Leonard decided to try to use Copper to gain control over and compliance from Plaintiff. (Id.) Defendant Leonard warned Plaintiff that Copper would bite if he did not stop resisting, to which Plaintiff responded, "F--- that dog," while continuing to kick and punch the Deputies. (Id. at 7.) Defendant Leonard then placed Copper on Plaintiff's right calf for a controlled bite. (Id.) Plaintiff hit and kicked Copper in the face, causing Copper to lose his grip and then reattach to Plaintiff's left calf. (Id.) Plaintiff then kicked Defendant Leonard in the chest, after which Defendant Leonard struck Plaintiff in the face with "hard hands." (Id.)

Defendant Leonard observed that Plaintiff did not appear to be affected by pain during the altercation, and Plaintiff later testified that smoking meth gives him "a little energy." (Id. at 6; Doc. 54-1, at 19.) Nonetheless, Plaintiff eventually came under the Deputies' control and was transported to a hospital for treatment of his dog bite injuries. (Doc. 53, at 8.) Defendants Leonard and Fredericks also received medical treatment for their

injuries caused by Plaintiff: Defendant Fredericks for Plaintiff's bite to his forearm, and Defendant Leonard for rib injuries from Plaintiff's kicks. (Id.) Defendant Leonard believed at the time he suffered from bruised ribs, but due to pandemic-related hospital protocols, he received limited treatment. (Id.) An x-ray taken several months later showed he had suffered a broken rib. (Id.)

Plaintiff was charged in the Superior Court of Columbia County with three counts of felony obstruction of a law enforcement officer, one count of harming a police dog, one count of possession of methamphetamine, and two traffic violations. (Id. at 8-9.) On September 23, 2022, he pled guilty to two counts of felony obstruction of Defendants Leonard and Fredericks, one count of harming a police dog, and one count of possession of methamphetamine. (Id. at 9; Doc. 52-1, at 37, 43.)

Plaintiff initiated this action on July 25, 2022, while his criminal charges were still pending. (Doc. 1.) He names Deputies Leonard, Rose, and Fredericks; Columbia County Sheriff's Department Supervisor R.J. Koch; Sheriff Clay Whittle; Columbia County; John/Jane Doe Officers; and John/Jane Doe Supervisors as Defendants. [1] (Id. at 1.) Count One asserts violations of the

---

[1] Though the complaint purports to sue Defendant Koch "as a supervisor and officer with the Columbia County Sheriff's Department, who personally reviewed and ratified the challenged events," Plaintiff fails to allege any facts regarding Defendant Koch or assert any claim against him. (Doc. 1, at 6-18.) Defendants argue such failure entitles Defendant Koch to judgment as a matter of law. (Doc. 52, at 29.) The Court agrees. Defendants' motion for summary judgment as to Defendant Koch is therefore **GRANTED**. The Court notes the complaint also fails to assert any claim against the John/Jane Doe Officers and

Fourth and Fourteenth Amendments by Defendants Rose, Leonard, and Fredericks. (Id. at 11.) Count Two asserts Defendant Leonard violated the Fourth Amendment's prohibition against excessive force.[2] (Id. at 14.) Count Three asserts Defendant Whittle is liable in his individual capacity for the customs or policies that caused the alleged excessive force. (Id. at 4, 15.) Finally, Plaintiff asserts an unnumbered count seeking injunctive relief against Defendant Columbia County. (Id. at 17.)

Defendants filed the instant motion for summary judgment (Doc. 51) and motion to exclude testimony (Doc. 56) on December 4, 2024. Plaintiff then sought multiple extensions of his deadline to respond to Defendants' motion for summary judgment, statement of material facts, and motion to exclude testimony. (Doc. 58, 61, 64.) Upon granting the third request for extension of time, the

---

Supervisors. (Doc. 1, at 11, 14-15, 17.) Additionally, "fictitious-party pleading is not permitted in federal court" unless "the plaintiff's description of the defendant is so specific as to be at the very worst, surplusage." Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010) (citations and internal quotation marks omitted). Plaintiff alleges the John/Jane Doe Officers were Columbia County Sheriff's Department officers "who threatened witnesses with a taser," and that the John/Jane Doe Supervisors "have a duty to review information from prior events by witnesses and officers" and take corrective action that would have prevented the challenged use of force. (Doc. 1, at 3-4, 10.) Because Plaintiff asserts no claims against the John/Jane Doe Officers and Supervisors, and also because he does not describe them with the requisite specificity, the John/Jane Doe Officers and Supervisors are not proper parties and are therefore **DISMISSED**.

[2] Plaintiff has clarified his sole basis of liability as to Defendants Rose and Fredericks is their failure to intervene in Defendant Leonard's use of K-9 Copper to perform the controlled bite on Plaintiff. (Doc. 53, at 11; Doc. 52-8, at 7-8.) Plaintiff has also clarified his claims against Defendant Leonard are for excessive force in his use of Copper and punching Plaintiff in the face. (Doc. 53, at 11; Doc. 52-8, at 4-7.)

Court advised Plaintiff's counsel that it "w[ould] entertain no further requests to extend this deadline." (Doc. 65, at 1.) Plaintiff responded to Defendants' motion to exclude by the third prescribed deadline. (Doc. 66.) However, Plaintiff did not respond to Defendants' motion for summary judgment or statement of material facts before the thrice-extended deadline expired; instead, Plaintiff filed two additional motions for extension of time (Docs. 67, 69), then filed his responses to Defendants' motion for summary judgment and statement of material facts one and two days after the deadline, respectively (Docs. 68, 70). Defendants replied in support of their motions for summary judgment and to exclude (Docs. 75, 76), and Plaintiff filed sur-replies in opposition (Docs. 78, 79). In this action, the Clerk of Court gave Plaintiff notice of the motion for summary judgment and informed him of the summary judgment rules, the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. 55.) For that reason, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied. The Parties' motions are now ripe for the Court's review.

## II. MOTIONS FOR EXTENSION OF TIME

The Court first addresses Plaintiff's fourth motion for extension of time to respond to Defendants' motion for summary

judgment (Doc. 67) and fifth motion for extension of time to respond to Defendants' statement of material facts (Doc. 69). Though Plaintiff does not identify the authority under which he brings these motions, Federal Rule of Civil Procedure 6 provides, "When an act may or must be done within a specified time, the court *may*, for good cause, extend the time . . . if a request is made, before the original time or its extension expires; or . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1) (emphasis added). Plaintiff previously received three extensions of time, and the Court explicitly notified him it would entertain no additional requests in its Order granting the third extension. (Docs. 59, 63; Doc. 65, at 1.) Furthermore, Plaintiff's proffered reasons for delay - competing priorities in other cases and "problems with LEXIS" - are not so extraordinary as to compel the Court to reconsider its prior edict that the third extension would be Plaintiff's final. (Doc. 67, at 1; Doc. 69, at 1.) To grant Plaintiff's fourth and fifth motions for extension of time would render the Court's own directives devoid of substance. Plaintiff's fourth and fifth motions for extension of time (Docs. 67, 69) are therefore **DENIED**.

8

### III. MOTION FOR SUMMARY JUDGMENT

Defendants move for summary judgment on all counts. (Doc. 51.) Because the Court has denied Plaintiff's motions for extension of time, and because he responded to Defendants' motion for summary judgment and statement of material facts after the deadline, the Court considers Defendants' motion for summary judgment unopposed and their statement of material facts admitted by Plaintiff. See L.R. 7.5, SDGa. ("Failure to respond [to a motion] within the applicable time period shall indicate that there is no opposition to a motion."); L.R. 56.1, SDGa. ("Each statement of material fact shall be supported by a citation to the record. All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by a statement served by the opposing party.").

### A. Legal Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Facts are "material" if they could "affect the outcome of the suit under the governing [substantive] law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (citation omitted), and a dispute is genuine "if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor," Waddell v. Valley Forge Dental Assocs., Inc., 276 F.3d 1275, 1279 (11th

Cir. 2001) (citation omitted). The court must view factual disputes in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [the non-moving party's] favor," United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted). The court should not weigh the evidence or determine credibility. Anderson, 477 U.S. at 255.

The moving party has the initial burden of showing the court, by reference to materials on file, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the non-movant has the burden of proof at trial, the movant may carry the initial burden in one of two ways: by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Catrett, 477 U.S. 317). If — and only if — the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." Id. at 608. Even where, as here, a motion for summary judgment is unopposed and the movant's statement of material facts is deemed admitted, the district court must still consider the merits of the motion and review the

movant's citations to the record "to determine if there is . . . no genuine issue of material fact." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009) (citation omitted); see also United States v. 5800 SW 74th Ave., 363 F.3d 1099, 1101 (11th Cir. 2004). The presence of any genuine issue of material fact renders summary judgment inappropriate. 5800 SW 74th Ave., 363 F.3d at 1101.

The Court addresses Defendants' arguments for summary judgment in turn.

## B. Whether Heck Bars Plaintiff's Claims

Defendants first assert summary judgment is warranted because Heck v. Humphrey, 512 U.S. 477 (1994), bars Plaintiff's claims. (Doc. 52, at 9.) "In Heck v. Humphrey, the Supreme Court sought to avoid the problem inherent in two potentially conflicting resolutions arising out of the same set of events by foreclosing collateral attacks on convictions through the vehicle of a § 1983 suit." Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192 (11th Cir. 2020) (citation and internal quotation marks omitted). Thus, one who has been convicted of a state crime "may not bring a claim for damages under 42 U.S.C. § 1983 if 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence.'" Heid v. Rutkoski, 857 F. App'x 558, 562 (11th Cir. 2021) (quoting Heck, 512 U.S. at 487). Heck turns on "logical necessity," and "as long as it is possible that

a § 1983 suit would not negate the underlying conviction, then the suit is not <u>Heck</u>-barred." <u>Dyer v. Lee</u>, 488 F.3d 876, 879-80 (11th Cir. 2007); <u>see also</u> <u>Rutkoski</u>, 857 F. App'x at 563 ("Because there exists a construction of the facts that would allow the underlying conviction[s] to stand, <u>Heck</u> does not bar [the plaintiff's] suit at this stage of the proceedings." (citation and internal quotation marks omitted)).

Defendants assert <u>Heck</u> bars Plaintiff's claims because success on any of his claims would necessarily negate his guilty plea to felony obstruction of law enforcement officers for the same events. (Doc. 52, at 9-10.) Defendants point to footnote six in the <u>Heck</u> opinion, which sets forth as an example of a <u>Heck</u>-barred claim that in which a plaintiff, after being convicted and sentenced for the crime of resisting a lawful arrest, pursues damages under § 1983 for an unreasonable seizure arising out of the same incident. (<u>Id.</u> at 11-12 (citing <u>Heck</u>, 512 U.S. at 486 n.6).)

In interpreting <u>Heck</u>, the Eleventh Circuit has recognized that a conviction of resisting arrest does not automatically preclude a § 1983 Fourth Amendment claim for excessive force during the arrest. <u>Hadley v. Gutierrez</u>, 526 F.3d 1324, 1331 (11th Cir. 2008). After all, "a general charge of resisting arrest d[oes] not necessarily mean that the officers [used the alleged excessive force] in response to [the arrestee]'s resistance." <u>Sconiers v.</u>

12

_Lockhart_, 946 F.3d 1256, 1269 (11th Cir. 2020) (citation omitted). It is possible that an individual who resists arrest could be subject to an officer's excessive force _after_ the arrestee has become compliant. See _Hadley_, 526 F.3d at 1331. In such case, a successful § 1983 suit against the officer would not necessarily invalidate a conviction of resisting arrest. See _id._

In _Hadley_, the federal plaintiff, who pled guilty to resisting arrest with violence under Florida state law, asserted the arresting officer punched him while he was handcuffed and not resisting. 526 F.3d at 1328, 1330. The arresting officer argued the plaintiff's excessive force claim arising out of the punch was barred by _Heck_ "in light of his guilty plea to resisting arrest with violence." _Id._ at 1331. The Eleventh Circuit, however, found no _Heck_ bar because it "[did] not definitely know . . . whether the punch complained about occurred at a time when [the plaintiff] was resisting." _Id._ The court reasoned that the charge to which the plaintiff pled guilty was "general in nature" and gave "no insight into the sequence of events surrounding [the plaintiff]'s arrest, including at what point [he] resisted." _Id._ So it was "theoretically possible that [the plaintiff] was punched then resisted, or even that he resisted first, but was punched after he stopped resisting," either of which scenario would indicate "a constitutional violation not barred by _Heck_." _Id._

13

Similarly, in Sconiers, an inmate who pled guilty to non-violently resisting a correctional officer later filed a § 1983 claim for Eighth Amendment violations arising out of the same underlying events. 946 F.3d at 1260-61. When determining whether Heck barred the inmate's claims, the court noted nothing in the record "illuminate[s] the sequence of events, including who said what when and who hit whom when." Id. at 1269. Consequently, the court had "no way to determine whether [the officer]'s use of force was necessarily responsive to [the inmate]'s non-violent resistance," so the coexistence of the inmate's resistance and the officer's excessive force was "not a logical impossibility." Id. at 1269-70.

The Court finds Plaintiff's claims are barred by Heck because the record makes clear that Defendant Leonard's use of force was necessarily responsive to Plaintiff's violent resistance to the Deputies' attempts to arrest him. Under the facts deemed admitted in Defendants' statement of material facts, Defendant Leonard placed Copper on Plaintiff for a controlled bite in response to Plaintiff "kicking and punching the deputies," and Defendant Leonard punched Plaintiff in the face only after Plaintiff kicked him in the chest. (Doc. 53, at 7.) Unlike cases in which the Eleventh Circuit declines to impose a Heck bar, there does not exist a possibility under the facts before the Court that the force of which Plaintiff now complains was not necessarily responsive to

his violent conduct – conduct to which he has already pled guilty. Therefore, a finding by this Court in Plaintiff's favor would imply his felony obstruction convictions are invalid.

Out of an abundance of caution, however, the Court addresses Defendants' remaining arguments for summary judgment. In doing so, it finds that even if Heck did not bar Plaintiff's claims, summary judgment for Defendants would still be proper because the Deputies and Defendant Whittle are entitled to qualified immunity, and Defendant Columbia County has no authority over the Sheriff's law enforcement function.

## C. Qualified Immunity

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Grider v. City of Auburn, 618 F.3d 1240, 1254 (11th Cir. 2010) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) and Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002)) (alteration and internal quotation marks omitted). This protection "is intended to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." Id. (citation and internal quotation marks omitted). Because

15

"[t]he line between lawful and unlawful conduct is often vague," qualified immunity "demands that a bright line be crossed." Post v. City of Fort Lauderdale, 7 F.3d 1552, 1558 (11th Cir. 1993), *modified*, 14 F.3d 583 (11th Cir. 1994).

"To receive qualified immunity, the government official must first prove that he was acting within his discretionary authority." Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003) (citing Vinyard, 311 F.3d at 1346). Once established, "the burden shifts to the plaintiff to demonstrate that qualified immunity is not appropriate." Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1303 (11th Cir. 2006) (quoting Lumley v. City of Dade City, 327 F.3d 1186, 1194 (11th Cir. 2003)). Courts then utilize a two-part framework to evaluate the qualified immunity defense. First, the Court addresses whether the plaintiff's allegations, if true, establish a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). If the facts, construed in the light most favorable to the plaintiff, show that a constitutional right has been violated, then the Court asks whether the right violated was "clearly established." Id. Depending on the unique circumstances presented in each case, however, courts are "permitted to exercise their sound discretion" in deciding which of the two Saucier prongs should be addressed first. Pearson v. Callahan, 555 U.S. 223, 236 (2009); accord Oliver v. Fiorino, 586 F.3d 898, 905 (11th Cir. 2009).

Because Defendants Leonard, Rose, Fredericks, and Whittle assert they acted within their discretionary authority during the events at issue, the Court next considers whether they violated a clearly established constitutional right. (Doc. 52, at 15-16, 23.)

## 1. Defendant Leonard

Plaintiff asserts Defendant Leonard violated his Fourth Amendment right to be free from unreasonable seizures when Defendant Leonard ordered Copper to bite Plaintiff and punched Plaintiff in the face. (Doc. 53, at 11.) The Court addresses the two bases for the claim against Defendant Leonard.

### a. *Use of Copper to Bite Plaintiff*

The Court begins its consideration of Defendant Leonard's decision to use Copper to bite Plaintiff with the second prong of the qualified immunity analysis: whether it was clearly established that Defendant Leonard's use of Copper would violate a constitutional right. See Jay v. Hendershott, 579 F. App'x 948, 950 (11th Cir. 2014) (disposing of claim based only upon second Saucier prong).

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202 (citation omitted). Put another way, "the state of the law at the time of an incident"

17

must have given the defendant "fair warning" of the unconstitutionality of his conduct. Callwood v. Jones, 727 F. App'x 552, 559 (11th Cir. 2018) (citation and internal quotation marks omitted). The Eleventh Circuit has held a right can be deemed clearly established in one of three ways:

> (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.

Hill v. Cundiff, 797 F.3d 948, 979 (11th Cir. 2015) (citation omitted). Plaintiff provides no timely argument supporting a finding of clearly established law under any of these three method and, therefore, has not carried his burden in showing qualified immunity is not appropriate. Bostic, 458 F.3d at 1303 (citation omitted). Even still, the Court will briefly address its reasons for finding the rights at issue were not clearly established.

Several Eleventh Circuit cases have explicitly addressed claims of excessive force by use of police dogs. See Jones v. Fransen, 857 F.3d 843, 853 (11th Cir. 2017) (examining Eleventh Circuit precedent on the issue). None, however, offer facts indistinguishable to those here. In Priester v. City of Riviera Beach, 208 F.3d 919 (11th Cir. 2000), the court found the defendant officer violated a clearly established right when he allegedly ordered his dog to bite the plaintiff, who was suspected of

stealing $20 of snacks from a golf shop and had already complied with the officer's order to get on the ground. 208 F.3d at 927. The officer nevertheless ordered and allowed the dog to bite for at least two minutes and threatened to kill the plaintiff when he kicked the dog to try to resist the attack. Id. The court found those facts were such that no reasonable officer could have believed the use of the dog was permissible. Id.

On the other end of the police dog excessive force spectrum, the court in Crenshaw v. Lister, 556 F.3d 1283 (11th Cir. 2009), found officers violated no constitutional right when they used a police dog to locate and apprehend a fleeing armed robbery suspect who had fled into dense woods at night after crashing into a police vehicle. 556 F.3d at 1291-92. The court found the fact that the suspect was attempting to surrender and alert the police of his location before the dog attacked did not render the officers' use of the dog unreasonable. Id. at 1292.

More recently, in Fransen, the court determined officers did not violate a clearly established right when they used a police dog to find and subdue a suspect who had broken into and stolen a television from his ex-girlfriend's apartment. 857 F.3d at 848, 851. After leaving the apartment, the suspect fled into "physically challenging terrain," "did not ultimately overtly surrender himself," and did not respond to warnings the police dog would be used. Id. The court reasoned that no clearly established

19

law was violated because the officers could reasonably have anticipated a potential ambush by the suspect when they decided to release the dog. Id.

The facts before the Court differ from those the Eleventh Circuit has considered. Unlike in Priester, Plaintiff did not submit himself to the Deputies or comply with commands. Quite the opposite - he refused orders; resisted Defendant Rose's efforts to search his pockets for drugs; punched, kicked, and bit the Deputies, such that two required medical attention; and reached toward his waistband while physically resisting the Deputies, leading them to believe he may have had a weapon. (Doc. 53, at 4-8.) Defendant Leonard only ordered Copper to bite Plaintiff after informing Plaintiff he would be bitten if he did not stop resisting, and Plaintiff continued kicking and punching the Deputies despite these warnings. (Id. at 7.)

But the facts here also differ in part from Crenshaw: no crime of which the Deputies suspected Plaintiff had committed necessarily involved a weapon, and the Deputies could see Plaintiff during the entire interaction, so there was no concern of a potential ambush. (See Doc. 53.) On the other hand, as in Crenshaw, the incident occurred outside in the dark, and, though he did not crash into a police car, Plaintiff did engage in physically violent behavior toward the Deputies. (Id. at 5-7.)

In any event, none of the above cases establish Defendant Leonard's conduct was clearly unconstitutional at the time of the incident. Further, the Court does not find, nor has Plaintiff identified, any broad principles establishing Defendant Leonard's conduct as clearly unconstitutional at the time of the incident.

Even absent case law or broad principles, a right may be clearly established when an officer's conduct is "so far beyond the hazy border between excessive and acceptable force that [the officer] had to know he was violating the Constitution even without caselaw on point." Hendershott, 579 F. App'x at 951 (citations omitted). This "obvious clarity" test "creates a narrow exception to the general rule requiring particularized case law to determine whether a right is clearly established." Id. (citation omitted). But again, Plaintiff offers no timely argument for why Defendant Leonard's conduct in ordering Copper to bite was clearly unconstitutional. And given Plaintiff's own conduct and his physical engagement with the Deputies and Copper before, during, and after Defendant Leonard ordered Copper to bite, the Deputies reasonably could have believed that Plaintiff "posed a significant threat to officer safety and to the safety of others." Id. at 953 (obvious clarity test not met when officer used police dog to apprehend suspect who "was altogether uncooperative").

For the above reasons, the Court finds no genuine issue of material fact exists as to whether Defendant Leonard violated a

clearly established constitutional right when he ordered Copper to bite Plaintiff while Plaintiff was physically assaulting the Deputies.

    b. *Strike to Plaintiff's Face*

The Court also finds Defendant Leonard is entitled to qualified immunity for his conduct in punching Plaintiff's face because the strike did not constitute excessive force.

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." Lee v. Ferraro, 284 F.3d 1188, 1197 (11th Cir. 2002) (citing Graham v. Connor, 490 U.S. 386, 394-95 (1989)). However, "[n]ot only does the right to make an arrest or investigatory stop necessarily carry with it the right to use some degree of physical coercion or threat thereof to effect it, but . . . the typical arrest involves some force and injury." Reese v. Herbert, 527 F.3d 1253, 1272 (11th Cir. 2008) (alteration, internal quotation marks, and citations omitted). And while the Fourth Amendment requires police officers to be objectively reasonable in conducting searches and seizures, it does not require them "to use the least intrusive or even less intrusive alternatives." Menuel v. City of Atlanta, 25 F.3d 990, 996-97 (11th Cir. 1994) (citation omitted). "[T]he force used by a police officer in carrying out an arrest must be reasonably proportionate to the need for that force, which is measured by the

severity of the crime, the danger to the officer, and the risk of flight." Ferraro, 284 F.3d at 1198.  The reasonableness of the force used "must be judged on a case-by-case basis 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" Post, 7 F.3d at 1559 (quoting Graham, 490 U.S. at 394).

The Court finds Defendant Leonard's use of force when he struck Plaintiff immediately after Plaintiff kicked him in the chest was reasonable.  As to the first factor, Plaintiff's initial refusal to comply with Defendant Rose's orders quickly transformed into a physical assault against all three Deputies – conduct for which he pled guilty to felony obstruction under O.C.G.A. § 16-10-24 (b).  And as to the second and third factors, Plaintiff resisted arrest in a manner that posed an immediate threat to the safety of the Deputies: he engaged them in a prolonged physical altercation in the dark, on muddy terrain.  (Doc. 53, at 5-7.)  He punched, kicked, and bit the Deputies, and Defendant Leonard only struck him after he kicked Defendant Leonard in the chest.  (Id.)  Plaintiff also reached toward his waistband while engaged in the fight.  (Id. at 6.)  Finally, the Court notes Plaintiff asserts he suffered no injuries beyond the dog bites to his legs.  (Doc. 54-1, at 23.)  Considering these facts, the Court finds "[Plaintiff's] interests in not being [struck] . . . [were] greatly outweighed by [Defendant Leonard]'s interests in expeditious performance of his

duties and safeguarding his, [Defendants Rose and Fredericks's], and others' well-being." Anthony v. Coffee Cnty., No. CV 512-70, 2013 WL 12092531, *8 (S.D. Ga. Oct. 29, 2013), aff'd, 579 F. App'x 760 (11th Cir. 2014). Defendant Leonard's use of force, therefore, was not unreasonable.

Because the Court finds Defendant Leonard did not use excessive force when he struck Plaintiff in the face and did not violate a clearly established constitutional right when he ordered Copper to bite Plaintiff, Defendant Leonard is entitled to qualified immunity. Defendants' motion for summary judgment as to Defendant Leonard is therefore **GRANTED**.

2. Defendants Rose and Fredericks

The sole basis of liability Plaintiff asserts against Defendants Rose and Fredericks is their failure to intervene to stop Defendant Leonard's use of Copper to perform the controlled bite.[3]  (Doc. 53, at 11.)  But "when an officer's force does not violate a clearly established right, other officers' failure to

---

[3] Though Plaintiff does not dispute this characterization of his claims against Defendants Rose and Fredericks, Count One of his complaint also asserts a claim against Defendants Leonard, Rose, and Fredericks pursuant to 42 U.S.C. § 1985(3), which provides a remedy for conspiracies to interfere with civil rights. (Doc. 1, at 11; Doc. 52-8, at 6-8.) However, it is undisputed the Deputies "did not enter into any agreement to deprive [Plaintiff] of any protected rights," which is an element for § 1985(3) claims. (Doc. 53, at 11 (citing Doc. 52-3, at 3; Doc. 52-5, at 4; Doc. 52-9, at 3)); see L.S.T., Inc. v. Crow, 49 F.3d 679, 682 n.4 (11th Cir. 1995) (explaining that 42 U.S.C. § 1985(3) "prohibits agreements to deprive persons of their civil rights" (emphasis added).)   Therefore, to the extent Plaintiff sought to assert a conspiracy claim under § 1985(3) against Defendants Rose, Leonard, and/or Fredericks, the Court **GRANTS** summary judgment as to Defendants because Plaintiff cannot prove an essential element of such claim.

intervene does not violate a clearly established right." Bussey-Morice v. Kennedy, 657 F. App'x 909, 915 (11th Cir. 2016). Therefore, because the Court has found Defendant Leonard's conduct did not violate a clearly established constitutional right, it **GRANTS** Defendants' motion for summary judgment as to Defendants Rose and Fredericks.

### 3. Defendant Whittle

Plaintiff asserts in Count Three that Defendant Whittle is liable individually and "in his capacity as a supervising officer and policy-maker" for "customs or policies that caused the challenged uses of excessive force." (Doc. 1, at 4, 15-16.) Specifically, Plaintiff contends Defendant Whittle's decision not to require deputies to wear body cameras and his inadequate training of K-9 handlers "combined to cause the challenged deprivation of Plaintiff's rights." (Id. at 17.)

Defendant Whittle contends the Eleventh Amendment bars Plaintiff's claims against him in his official capacity. (Doc. 52, at 24.) He also argues any individual capacity claim against him fails as a matter of law for three reasons: first, he did not violate Plaintiff's constitutional rights; second, Plaintiff offers no basis for his assertion that inadequate K-9 training or not providing body cameras caused a deprivation of Plaintiff's rights; and third, and he is entitled to qualified immunity. (Id. at 21-23.)

a. *Official Capacity Claims*

The Court first considers Defendants' arguments as to Plaintiff's official capacity claims against Defendant Whittle. The Eleventh Amendment "bars suits brought in federal court when the State itself is sued and when an 'arm of the State' is sued." Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003) (en banc) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977)). Eleventh Amendment immunity may be asserted not only by state officers and state officials, but by all persons "acting as an 'arm of the State,' which includes agents and instrumentalities of the State." Id. (citing Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429-30 (1997)). The determination of "whether a defendant is an 'arm of the State' must be assessed in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." Id. (citation omitted); see Grech v. Clayton Cnty., 335 F.3d 1326, 1336 (11th Cir. 2003) ("In contrast to the State, counties have no authority or control over, and no role in, Georgia sheriffs' law enforcement function. Counties do not . . . prescribe nor control [sheriffs'] law enforcement duties and policies."). Therefore,

> where a sheriff and his deputies are performing their
> official and authorized duties as state actors — i.e.
> engaged in general law enforcement functions or making
> arrests pursuant to state law - they are entitled to
> Eleventh Amendment immunity from a § 1983 claim for

26

money damages or other retrospective relief brought
against them in their official capacities.

Frederick v. Brown, No. CV 113-176, 2015 WL 4756765, at *14 (S.D.
Ga. Aug. 10, 2015) (citing Manders, 338 F.3d at 1328).

Plaintiff alleges Defendant Whittle is liable in his official
capacity as Columbia County Sheriff for implementing the policies
underlying Defendant Leonard's challenged use of force.   (Doc. 1,
at 15.)   Those policies include refusing to provide body cameras
to deputies, relying on deputies' written reports, and
inadequately training K-9 handlers.   (Id. at 15-17.)  As Defendants
point out, however, Defendant Whittle acts as an "arm of the State"
in promulgating these policies and, as such, is entitled to
Eleventh Amendment immunity for Plaintiff's official capacity
claims.   (Doc. 52, at 24-25); see Grech, 335 F.3d at 1336.   The
Court therefore **GRANTS** Defendants' motion for summary judgment as
to Plaintiff's official capacity claims against Defendant Whittle.

b. *Individual Capacity Claims*

The Court next turns to Defendants' arguments as to
Plaintiff's individual capacity claims against Defendant Whittle
in his role as a supervising officer.   "[S]upervisory liability
under § 1983 occurs either when the supervisor personally
participates in the alleged unconstitutional conduct or when there
is a causal connection between the actions of a supervising
official and the alleged constitutional deprivation."   Christmas

27

v. Harris Cnty., 51 F.4th 1348, 1355 (11th Cir. 2022) (citations omitted).    However, "[a] supervisor cannot be liable for the constitutional violation of his subordinate if the constitutional violation was not then clearly established." Dukes v. Deaton, 852 F.3d 1035, 1045-46 (11th Cir. 2017) (citation omitted).    Nor is a supervisor liable for the acts of a subordinate that do not amount to a constitutional violation. Howell v. City of Lithonia, 397 F. App'x 618, 621 (11th Cir. 2010).    Thus, because Plaintiff has not established Defendant Whittle's subordinates violated a clearly established constitutional right, Plaintiff cannot show a basis for supervisory liability as to Defendant Whittle.    The Court therefore **GRANTS** Defendants' motion for summary judgment as to Plaintiff's individual capacity claims against Defendant Whittle.

## D. Defendant Columbia County

In an unnumbered count at the end of his complaint, Plaintiff "asks the Court to require and order Columbia County to provide and require the use of body cameras on officers, to protect the [constitutional] rights of all citizens . . ., and to allow meaningful review of" interactions between officers and the public. (Doc. 1, at 17-18.)  Columbia County argues it should be granted summary judgment because Plaintiff fails to allege it committed any wrongdoing, Plaintiff has no standing to seek injunctive relief, and it does not control the Sheriff's policies or customs.  (Doc. 52, at 27-28.)

The Court finds Columbia County is entitled to summary judgment because it has no authority over the Sheriff's law enforcement functions. A county may be liable under § 1983 only when it is "actually responsible" for a constitutional violation. Grech, 335 F.3d at 1329 (citation omitted). To show a county is actually responsible, the plaintiff must "identify a municipal policy or custom that caused his injury." Id. (alteration adopted and citation and internal quotation marks omitted). Two methods exist by which to establish a county policy: the plaintiff may "identify either (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county." Id. (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978); Brown v. Neumann, 188 F.3d 1289, 1290 (11th Cir. 1999)). "[I]n doing so, the [p]laintiff must show that the county has authority and responsibility over the governmental function [at] issue." Temple v. McIntosh Cnty., No. 2:18-CV-91, 2019 WL 287482, at *3 (S.D. Ga. Jan. 22, 2019) (citing Grech, 335 F.3d at 1330).

This case involves allegations of excessive force during Plaintiff's arrest, so the government function at issue is law enforcement. See id. As noted above, "counties have no authority or control over, and no role in, Georgia sheriffs' law enforcement function." Grech, 335 F.3d at 1336. Therefore, because Columbia County has no authority over the policies of the Columbia County

Sheriff, Plaintiff cannot establish Columbia County is liable for the law enforcement policy he alleges caused his injury. Defendants' motion for summary judgment as to Plaintiff's claim for injunctive relief against Columbia County is **GRANTED**.[4]

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motions for extension of time (Docs. 67, 69) are **DENIED**, Defendants' motion for summary judgment (Doc. 51) is **GRANTED**. Defendants' motion to exclude testimony (Doc. 56) is **DENIED AS MOOT**. The Clerk is **DIRECTED** to **TERMINATE** all pending motions and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this *1st day of August,* 2025.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[4] Because the Court grants Defendants' unopposed motion for summary judgment, it need not address their motion to exclude testimony by Plaintiff's expert witness. (Doc. 56.) Defendants' motion to exclude (id.), therefore, is **DENIED AS MOOT**.